411 So.2d 608 (1982)
Iris LUCIDO
v.
AETNA LIFE AND CASUALTY COMPANY.
No. 14478.
Court of Appeal of Louisiana, First Circuit.
March 3, 1982.
*609 Velma O'Neal, and Robert J. Mack, Hammond, for plaintiff.
Iddo Pittman, Jr., Hammond, for defendant.
Before CHIASSON, EDWARDS and LEAR, JJ.
LEAR, Judge.
Plaintiff, Iris Lucido, was employed by the D. H. Holmes Department Store in Hammond, Louisiana. She testified that, while at work on May 8, 1979, she had been replacing boxes of shirts on the shelves for approximately forty-five minutes. During this restocking, she stooped down and picked up a box containing approximately four shirts. Upon twisting around and putting the box on the shelf behind her, she immediately felt a "crick" in her neck. After informing her supervisor of this incident, he advised her to sit down and take it easy. After work that day plaintiff drove approximately fifteen miles to Amite, Louisiana, to visit a sick friend in the hospital. When leaving the hospital, plaintiff suffered a severe pain in her neck, and immediately went to the hospital emergency room and was treated by Dr. Thomas C. Evans. Dr. Evans found some muscle spasm and that plaintiff was emotionally upset, and he gave her medication (valium) and advised her to see her family physician.
From that time forward plaintiff continued to suffer pain and sought medical assistance. After nine months of conservative treatment by a number of doctors, plaintiff was examined by Dr. R. C. Llewellyn, a neurosurgeon, who found that plaintiff had suffered a ruptured intervertebral disc at the C5-C6 level. Dr. Llewellyn recommended the removal of this ruptured disc, which recommendation plaintiff accepted. Plaintiff underwent surgery by Dr. Llewellyn on February 27, 1980.
Plaintiff filed suit for Workmen's Compensation benefits seeking total and permanent disability benefits. The trial judge rendered judgment in the plaintiff's favor, concluding that she was totally and permanently disabled. We affirm.
The employee in a workmen's compensation action must establish by a preponderance of the evidence that he received personal injury arising out of and in the course of his employment and that a causal relationship exists between his disability and that accident. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978); Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976). However, the burden of proof shifts to the *610 defendant once the plaintiff shows that the accident and injury are causally connected without an intervening cause. Haughton v. Fireman's Fund American Insurance Company's, 355 So.2d 927 (La.1978). Further, we must give a liberal interpretation, in favor of the employee, to the terms "accident" and "injury" in LSA-R.S. 23:1021(1) and (6). Lay v. Allied Chemical Corporation, 340 So.2d 1076 (La.App. 1st Cir. 1976).
The plaintiff's testimony at trial concerning the incident which caused her to experience a "crick" in her neck is an incident within the statutory definition of the term "accident" as used in our workmen's compensation statute. The existence of the injury is well documented in the record and is not in dispute. The plaintiff's testimony that the accident caused the injury is supported by the expert testimony of Dr. Llewellyn, who testified that the type of disc injury suffered by plaintiff can be initiated by seemingly minor trauma, and he ascribed plaintiff's ruptured disc to her work injury. In further support of her contention, the record indicates the plaintiff was in good health prior to the work incident on May 8th and that her symptoms commenced with her accident at work and continued to manifest themselves continuously thereafter.
The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Cadiere v. West Gibson Products Company, Inc., supra; Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring Co., 283 So.2d 716 (La. 1973). The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared to the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between respective courts." Canter v. Koehring Co., supra at 724.
With regard to plaintiff's disability, Dr. Llewellyn stated that "I feel that she was disabled as to working in a regular job assignment outside her home, particularly one that would require lifting or using her arms at shoulder level or above her head." He further stated that plaintiff, in the normal course of events, would probably continue to have some episodes of uncomfortableness when she exceeds her exertional tolerance.
Plaintiff herself testified that, after her operation, she was limited in her physical activities and had to be careful even in doing things around her house. She testified that she was unable to vacuum her whole house or work in her yard as she used to do. She also stated that her neck would bother her if she kept her arms above her head too long and that she was only able to work in the yard for fifteen to thirty minutes.
Our review of this record convinces us that the evidence, taken as a whole, supports the finding of the trial court that plaintiff was permanently disabled from working due to a ruptured disc injury, which she sustained while in the course or scope of her employment.
With regard to the penalties and attorney fees awarded, in its written reasons for judgment, the trial court stated that "counsel for plaintiff wrote four letters to defendant which were ignored." All the doctors seen by Mrs. Lucido recognized the fact that she had a problem in the cervical region. However, the record indicates that the only compensation paid to plaintiff was in the amount of Two Hundred Eighty-seven and No/100 ($287.00) Dollars covering the period from June 18, 1979, to August 16, 1979. The record is otherwise devoid as to any evidence indicating why plaintiff's compensation was discontinued. Defendant was aware that plaintiff was continuing to suffer from and to seek medical treatment for her neck injury. This is confirmed by a letter sent to defendant by plaintiff's attorney, dated February 12, 1980, which included a letter *611 from Dr. Llewellyn indicating that plaintiff was to enter the hospital for diagnosis and treatment of a suspected cervical disc. We find that the evidence supports the trial court's conclusion that the insurer failed to act reasonably in terminating and/or refusing to reinstate compensation benefits.
In fixing attorney fees, the trial court noted the unusual amount of time required of plaintiff's counsel in preparing this case, including thirteen depositions, five of which were taken in New Orleans. Considering the travel, time and expense involved in preparation and trial of this case, we do not find that the trial court erred or abused its discretion in fixing the amount of attorney fees awarded in this case. Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir. 1976).
We do find merit, however, in defendant's contention that the trial court erred in failing to give it credit for compensation benefits which were paid to plaintiff. The record indicates, and plaintiff has admitted, that she received compensation benefits in the amount of Two Hundred Eighty-seven and No/100 ($287.00) Dollars, covering the period from June 18, 1979, to August 16, 1979. The trial court also noted that plaintiff returned to work for one week after her accident and defendant is also entitled to a credit for this time.
For the foregoing reasons, the judgment of the trial court is hereby amended to allow defendant a credit for compensation paid to plaintiff in the amount of Two Hundred Eighty-seven and No/100 ($287.00) Dollars, plus one week of compensation. The judgment of the trial court in all other respects is hereby affirmed. Defendant is to pay all costs, both at trial and on appeal.
AMENDED, AND AS AMENDED AFFIRMED.