887 So.2d 549 (2004)
Kevin P. DONAHOE
v.
JEFFERSON COUNCIL ON AGING, INC.
No. 04-CA-178.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*550 John M. Holahan, Jr., Metairie, LA, for Plaintiff/Appellant.
Amanda H. Carmon, Baton Rouge, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Plaintiff/Appellant, Kevin Donahoe, appeals a ruling from the office of worker's compensation, District 7, which denied his claim for benefits based upon a finding that he was not injured in the course of his employment. For the following reasons, the judgment of the court is affirmed.

FACTS AND PROCEDURAL HISTORY
Plaintiff/Appellant, Kevin Donahoe ("Donahoe",) was employed by the Jefferson Council On Aging, Inc. ("JCOA",) in Jefferson *551 Parish as a senior center supervisor. On July 18, 2001, Donahoe filed a Disputed Claim For Compensation, alleging that he injured his back on May 11, 2001, while lifting boxes for the JCOA. Trial proceeded before the Honorable Sylvia Steib on June 23, 2003. At the conclusion of trial, the court found: 1) That Donahoe was not injured by accident during the course and scope of his employment on May 11, 2001; 2) Donahoe failed to meet the requisite burden of proof to show a connection between his injuries and his employment, and; 3) Donahoe was not entitled to any worker's compensation benefits.
Donahoe timely filed the present appeal.

LAW AND ANALYSIS
On appeal, Donahoe raises the following assignments of error: 1) That the court erred in concluding that there was not an accident as defined by the LWCA; 2) The court erred in failing to accept Donahoe's uncontroverted and corroborated testimony regarding the accident; 3) It was an error to fail to award lost wage benefits from the alleged date of disability to the present considering the nature of the injury and the fact that no attempt was made to subsequently offer him a job, and; 4) The court erred in failing to award penalties, attorney's fees and interest from the date of each payment considering that the employer had knowledge that he had back surgery and was unable to return to work.
The appellate court's standard of review in a workers' compensation case is governed by the manifest error or clearly wrong standard.[1] This standard precludes setting aside a trial court's or a jury's finding of fact in absence of manifest error or unless it is clearly wrong.[2] In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.[3] The reviewing court is compelled to review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.[4] The Supreme Court has emphasized that it is crucial that the reviewing court keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[5]
The plaintiff in a workers compensation suit has the burden of proving, by a preponderance of the evidence, that there is a work related disability.[6] The testimony of the worker alone may be sufficient to discharge this burden of proof, absent other evidence which discredits or casts doubt on the worker's version of the incident and the testimony is supported by corroborating circumstances.[7] The corroborating *552 evidence may be provided by the testimony of spouses, co-workers, friends or medical evidence.[8] In evaluating this evidence, the uncontradicted testimony of a witness, even if the witness is a party, should be accepted as true, in the absence of circumstances casting suspicion on the reliability of the testimony.[9]
In the present case, Donahoe testified at trial. He stated that he first became an employee of the Jefferson Council On Aging in July of 1999, and was hired to supervise nine senior citizen activity centers in Jefferson Parish. Donahoe said that physical activity was a required part of his job, in particular moving boxes of goods or computer boxes. Donahoe said that on May 11, 2001 he was moving approximately 75 boxes of goods, when his back started hurting. He claims that he had never had pain in that particular area of his back prior to May 11, though he had "strained" his back in January of 2001.
Donahoe went to see Dr. Henry Eiserloh on May 18, 2001, who was the same physician who had treated him for the previous injury in January 2001. Donahoe testified that he told Dr. Eiserloh that he had injured his back lifting boxes at work. At the suggestion of Dr. Eiserloh, and MRI was conducted which revealed damage to several discs in Donahoe's back.
Donahoe also sought a second opinion from Dr. Robert Mimeles. Donahoe indicated to Dr. Mimeles that he had a history of back pain, but that a pain in his left leg had only begun the month before. Donahoe said that he indicated to Dr. Mimeles that he had been injured at work. Dr. Mimeles recommended that Donahoe consult a neurosurgeon, Dr. Dowd, and that he stay away from work until that consultation had been completed.
Donahoe met with Dr. Dowd on approximately August 10, 2001. Dr. Dowd recommended physical therapy and epidural injections. At that time, Donahoe had stopped working at the Jefferson Council On Aging as of mid-July, 2001, because of the pain that he felt. However, on October 15, 2001, Dr. Dowd advised Donahoe that he should return to light duty. After undergoing surgery for a disc repair at L4-L5-S1 in November of 2001, Donahoe was discharged on January 11, 2002. Donahoe stated that he was officially terminated from the Jefferson Council On Aging on January 11, 2002 and that although he is able to work with some restriction, he was never offered any other type of light-duty employment.
Donahoe said that none of his medical bills were paid for by workers' compensation, but were instead paid for under his personal insurance policy through Blue Cross.
On cross examination, Donahoe affirmed that the report that he had submitted for the accident which allegedly took place on May 11, was turned in on July 10, 2001. Donahoe said that the report also indicates that he had been injured in an accident at the Jefferson Council On Aging on January of 2001 while transporting boxes. Donahoe treated with Dr. Eiserloh for that incident as well, but admitted that when he treated with Eiserloh on that occasion, he told Dr. Eiserloh that he had been injured at home. Donahoe also admitted that he had been treated for lower back pain in June of 2000. Donahoe acknowledged that in his previous deposition, he said that no one was with him when he allegedly injured his back in the May 2001 incident.
*553 When questioned about why neither Dr. Eiserloh nor Dr. Mimeles had not made any notes in his medical chart regarding an accident at work, Donahoe claimed that he did not know since he had informed both of them about the details surrounding his injury.
Cherie Jefferson, a claims representative for the LWCC also testified at trail. Jefferson stated that Donahoe informed her that there were no witnesses to the alleged accident. Jefferson said that other than one visit to Dr. Dowd, LWCC did not pay for any of Donahoe's medical care, as the medical records from Dr. Eiserloh and Dr. Mimeles indicated that Donahoe had not reported a work related accident to them. On cross examination, Jefferson said that she informed Donahoe on August 28, 2001, of the LWCC's decision not to provide him benefits. Jefferson said that because of the records provided by Dr. Eiserloh and Dr. Mimeles, she did not find later reports by Dr. Dowd, which claimed that Donahoe's injury was work related, to be credible.
The deposition of one of Donahoe's co-worker's Harvey Sandifer, was also entered into evidence as well. Sandifer gave the following testimony:
Q: Who was in the conference room?
A: Kevin Donahoe. And there was nobody else in there. He was  they had tables around the conference room ... And on the floor there were a couple of boxes. He's wanting to know if I could help him lift. Those boxes were, I'd say, two foot wide, about two foot high, and approximately four foot long. What was in them, I don't know, but they were heavy. So I reached down, helped him pick them up. Now, when  I picked up  after picking up the first one, I saw the man lean and grab his back. All right? And I says, "Are you all right?" He says, "Yeah. I'm okay."... Kevin came up the elevator, came into my office, told me he hurt his back.
...
Q: Did he tell you that he had injured his back lifting those boxes?
A: He said he hurt his back downstairs.
In his first and second assignments of error, Donahoe argues that that the court erred in concluding that there was not an accident as defined by the LWCA, and in failing to accept Donahoe's testimony regarding the alleged accident. We disagree.
After a review of the record, we cannot say that the trial court's judgment was manifestly erroneous on these issues. As previously stated, in a workers' compensation claim, the claimant has the burden of proving the occurrence of a work-related accident. In this case, Donahoe's assertions contain several inconsistencies on their face, which the trial court apparently found to render his claim not credible. Donahoe's testimony, that the alleged May 11, 2001 accident was not witnessed, was contradicted by the testimony of Harvey Sandifer, who said that he was right there when the alleged accident took place. Donahoe next claims to have been injured on that date, yet he failed to make a contemporaneous report of the injury to his employer, and, in fact did not make a report to his employer until several months later. And while Donahoe testified at trial that he did not report the injury because he did not "think it was going to be that severe," in the meantime he sought medical attention for his condition. The reports from his treating physicians prior to informing his employer about his alleged injury, however, have no indication that that Donahoe was being treated for a work-related injury.
Where there is a conflict in testimony, "reasonable evaluations of credibility *554 and reasonable inferences of fact should not be disturbed upon review" even though the appellate court may feel that its own evaluations and inferences are reasonable.[10] Deference is due to the factfinder's determinations regarding the credibility of witnesses "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said."[11]
Considering the foregoing, we find no error in the workers' compensation judge's decision to give weight to the existence of inconsistencies and the conclusion that the evidence casts doubt on Donahoe's version of the events at trial. Accordingly, we find appellant's first two assignments to be without merit.
In light of our finding that the trial judge did not err in finding that work-related accident did not occur, we will pretermit discussion on Donahoe's remaining assignments of error.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992).
[2] Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993).
[3] Mart v. Hill, 505 So.2d 1120 (La.1987); Rosell, 549 So.2d at 840; Stobart, 617 So.2d 880.
[4] Id.
[5] Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
[6] Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Kramer v. Johns-Manville Sales Corp., 459 So.2d 642 (La.App. 5th Cir.1984).
[7] Bruno v. Harbert International, Inc., supra.
[8] Bruno v. Harbert International, Inc., supra.
[9] Bruno v. Harbert International, Inc., supra; Clakeley v. Ochsner Foundation Hospital, 478 So.2d 1335 (La.App. 5th Cir.1985).
[10] Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993).
[11] Rosell v. ESCO, 549 So.2d 840 (La.1989).